King, J.
This is a petition in error to reverse the judgment of the court of common pleas. The original action was in replevin, commenced before a Justice of the Peace, to recover *613 goods of the value of $295.30, which were taken in replevin and turned over to the plaintiff. A trial was had in that court, and a verdict rendered for the defendant, finding the value of the goods. The case was appealed to the common pleas, the pleadings filed and a trial had, which resulted in a verdict for defendants, for the same amount, with interest.
It is claimed that the verdict was not supported by the evidence, and that claim is based ’ substantially on these facts: The defendant, Theodore Hollander, was a merchant here in Toledo, and some time in November, perhaps as early as October, ordered a bill of goods of the plaintiffs in error, who were merchants in St. Louis, through a member of the firm who was a traveling agent also, and who appeared here in Toledo and sold .the goods, the goods taken being perhaps eight or ten dollars less than the amount of goods originally sold. It is claimed by plaintiffs in error that, at the time of the pucrhase of these goods, Theodore Hollander stated, in answer to questions by the plaintiffs’ agent, that business was first-class with him; that he asked him how his trade was, and he replied that it was first-class; that he asked him whether he owed anything for that season’s bills, and he replied that the season was all light; that he would discount every bill he bought, and' didn’t owe anything. Hollander denied all of that conversation, and said that the goods were bought in t'he ordinary way; that no such questions were asked or answered by either of them; that'the goods were to be shipped pretty quick, and he was expecting them along about the middle of November, and they didn’t come, and along about the 23rd of November,he sent a postal card to the plaintiffs and asked what had become of the goods. The goods did arrive here about the 28th or 29th of November, and on the 30th of November, he executed amortgage, covering these goods and all the rest that he had, to his wife, to secure an indebtedness of $7895.03, and delivered possession of the mortgage and of the goods to her; and a day or two after, I think about the 4th of December, he made a general assignment of his goods for the benefit of his creditors. The record is very scant in stating as to the amount of his indebtedness. In a general way, it is stated that it was $7,000, in addition to this indebtedness to his wife, making, in round numbers, an indebtedness of about $15,000. It was stated in argument that his goods inventoried $7,000 or $8,000, and that the goods sold for $3,000 or $4,000, but there is nothing of that kind in the record. What the goods were worth, or what they sold for, we do not know. There was testimony that he- was selling goods *614 at that time to the amount, on the average, of about $900 per month, and had been doing 30 for six months previous. He swears that about fifty per cent, of that would be profit, and about half of that expensse. I think it appears from the record that he did not have any net profit at all, but was running behind hand. So far as the wife is concerned, I don’t know that her claim under the chattel mortgage is at all material, only as a circumstance indicating what the defendant was doing or intending, with this property. It was conceded that the debt to his wife was valid and bona fide; that he had received from her from timó to time, for a period of ten years, money in different sums which he had borrowed, until it amounted to over $7,000, and he had given her notes when he had received these sums, and that they had been merged into to notes; that in the fore part of January of each year, the interest was computed and a new note given. These two notes are exhibited. There is no question, then, about the indebtedness to his wife,and there is no question but that he owed other bills of a certain kind, but just what they are, when incurred, or whether they were past due, or whether any of them are due, the record is entirely silent, and the question is whether the verdict is against the weight of the evidence in that state of the testimony. The court charged the jury in this language:
“Now, the inquiry in this case in this connection is, whether it was Hollander’s intent at the timé he bought the goods not to pay for them. The intent of a person, the intent with which an act is done, is an operation of the mind, and can only be determined from the act itself, and from the surrounding circumstances, and from the acts and declarations of the parties in connection therewith. It is a question of fact which you must decide from a consideration of all the facts and circumstances. The fact, if it be a fact, that at the time of the purchasing of these goods Hollander was insolvent — that is, that his debts exceeded his property— that fact is not of itself sufficient to show that his intention was not to pay for the goods; because an insolvent person in purchasing goods may intend to pay for them, and may expect that he will be able to pay for them. So also, if Hollander as insolvent, and his insolvency was known to him and was not known to the plaintiffs,that of itself is not sufficient to show that his intention was not to pay for the goods. But if Hollander knew that he was insolvent, and in view of all the circumstances of which he had knowledge he had no reasonable expectation that he would be able to *615 pay for the goods, then, in law, that is equivalent to an intention not to pay for them. Under such circumstances it would be fraud to buy the goods and agree to pay for them, if he had no reasonable expectation that he would be able to pay for tbem.”
JSlo complaint is made of the charge, and the charge states the law. As the Supreme Court say in 31 Ohio St., Talcott v. Henderson:
“While therefore a purchase of goods by an insolvent vendee, who conceals his insolvency, with intent to injure the vendor, is fraudulent and voidable, yet a purchase under like circumstances, save only that such intent is absent, is not, in law, fraudulent.
“If the rule of law be not as stated, and the intent to injure be not of the essence of the fraud in such case, then it would be wholly immaterial whether the insolvency of the purchaser was known to himself; and the rule would be that all sales to an insolvent purchaser, where the insolvency is unknown to the vendor, are fraudulent and voidable. For such a rule no one would contend. All would admit that knowledge by the purchaser of his own insolvency is necessary to establish the fraud. But such knowledge, of itself,is entirely innocent. It is only where connected with the concealment of the fact, that fraud is shown. The simple failure to disclose a fact, however, is not equivalent to its concealment. The latter implies a purpose, a design; the former does not. If then, such knowledge on the part of the purchaser be necessary to make out a fraud, it is because it becomes the predicate of an intent — an intent to injure.”
There is no evidence in the record, tüat we can find, tending to show with any certainty whatever, that this defendant, Hollander, knew anything about his condition or his circumstances, when he ordered this bill of goods. He knew that he ran along and was doing a business of about seven, eight or nine hundred dollars a month, and that a part of it was profit, and, for anything that appears in the record,his ordering of this bill of goods which was not extravagant, — $300—was done with a perfect intention on his part to pay for them when the bill became due, if he continued in business. There is. nothing to show that he did not think of continuing in business at the time that he gave the order. There is nothing in the circumstances of the order tending to show that, except the declaration of the plaintiffs’ agent that he did make an expression of his 'ability to¡pay*and|of *616 his condition, which, if he did make it, would be an evidence of an intent to commit fraud; but that he denies. That question of facts was submitted to the jury.
M. G. Bloch Attorney for Plaintiff in Error.
E. D. Potter, Jr., Attorney for Defendant in Error,
We are unable to find anything in this record that would warrant us in setting the verdict aside. The question of fact has been passed upon by the jury, and without some indication from the record itself that the jury were not warranted in their finding upon the state of facts here disclosed, the judgment of the common pleas must be affirmed, and we so find.